UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MAJOR SINGH JAMMU | * | CIVIL ACTION NO. 25-815 |
| | * | |
| | * | SECTION: "P"(1) |
| VERSUS | * | |
| | * | JUDGE DARREL JAMES PAPILLION |
| | * | |
| UNITED STATES CITIZENSHIP AND | * | MAGISTRATE JUDGE |
| IMMIGRATION SERVICES | * | JANIS VAN MEERVELD |
| ********************************** | * | |

REPORT AND RECOMMENDATION

The plaintiff in this lawsuit seeks to compel the federal agency defendant to adjudicate three immigration petitions that have been pending for over five years without a decision. Before the Court is the defendant's Motion to Dismiss (Rec. Doc. 7), in which it argues that this Court does not have jurisdiction over plaintiff's claims. The Immigration and Nationality Act strips this Court of jurisdiction over discretionary immigration decisions or actions, including the pace of adjudication according to recent precedent. Finding this precedent applies similarly to the relief plaintiff seeks here, IT IS RECOMMENDED that the Motion to Dismiss (Rec. Doc. 7) be GRANTED and plaintiff's complaint be dismissed for lack of jurisdiction.

Background

Plaintiff Major Singh Jammu is an immigrant who is living lawfully in the United States. He filed three Form I-730 Petitions with United States Citizenship and Immigration Services ("USCIS") on March 24, 2020, including all required evidence. Rec. Doc. 1, at 2. An I-730 Petition may be used by a refugee or an asylee admitted or granted asylum within the past two years to request that his spouse and unmarried children under 21 years of age join the refugee/asylee in the United States.[1]

---

[1] See USCIS, I-730, Refugee/Asylee Relative Petition, https://www.uscis.gov/i-730 (last accessed Feb. 9, 2026, at 4:42 PM).

1

More than five years later when Jammu filed the present Complaint for Injunctive Relief and Mandamus Relief on April 27, 2025, USCIS had not taken any action on the I-730 Petitions. Rec. Doc. 1, at 2. In this lawsuit, Jammu challenges the alleged refusal to adjudicate the Petitions within a reasonable amount of time. Id. He invokes the Administrative Procedure Act, 5 U.S.C. §§ 555(b),706(1); the Mandamus Act, 28 U.S.C. § 1361; the Equal Access to Justice Act (for purposes of demanding an award of cost's, attorney's fees, and expenses); the Fifth Amendment of the United States Constitution; and the Immigration and Nationality Act. Id. at 3-6. He claims he suffers irreparable harm "each day that he is not allowed a fair administrative hearing to determine if his family will be allowed to legally immigrate to the United States." Id. at 5.

USCIS appeared and filed a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), which the District Judge referred to the undersigned for a report and recommendation.

Law and Analysis

1. *Rule 12(b)(1)*

A party may seek dismissal of claims against it for lack of subject-matter pursuant to Federal Rule of Civil Procedure 12(b)(1). The Court may decide a motion to dismiss for lack of subject-matter jurisdiction on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The party asserting jurisdiction bears the burden of proof. Id.

Mr. Jammu invokes this Court's jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C.A. § 1331. Although in his Complaint he cites the Administrative Procedure Act (APA), the Declaratory Judgment Act, and the

Mandamus Act as providing jurisdiction, he only invokes the APA and the Mandamus Act in opposing the Motion to Dismiss. [2]

    *2. Jurisdiction: the Administrative Procedure Act and the Immigration and Nationality Act*

    Under the APA, this Court has jurisdiction to review "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The definition of "agency action" includes "failure to act." Id. § 551(13). Additionally, the APA provides that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." Id. §706(1). Indeed, the APA requires that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).  Importantly, though, the United States Supreme Court instructs that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004). For example, in a recent per curium decision, the Fifth Circuit found that while the grant or denial of plaintiffs' green card applications was a "discrete agency action," plaintiffs could not show that the agency was "required to take action" on the applications "by the time the plaintiffs say it should have." Li v. Jaddou, No. 22-50756, 2023 WL 3431237, at *1 (5th Cir. May 12, 2023). At the time they had filed their complaint, the application forms had been pending for just under 12 months. Noting that Congress had enacted an "aspirational goal of six months,"[3] the court of appeals found there was "no clear mandate here

---

[2] In any event, the Declaratory Judgment Act authorizes federal courts to provide declaratory relief but does not provide an independent basis for jurisdiction. Rivero v. Fid. Invs., Inc., 1 F.4th 340, 343 (5th Cir. 2021).

[3] "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application, except that a petition for a nonimmigrant visa under section 1184(c) of this title should be processed not later than 30 days after the filing of the petition." 8 U.S.C. § 1571(b).

such that we can say the USCIS was required to act within six months, or even within a year." Id. The Fifth Circuit affirmed the District Court's dismissal of plaintiffs' claims. Id.

Even if a plaintiff can show that an agency was required to take a discrete action and has failed to do so, though, the judicial review provisions of the APA do not apply where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Relevant to the first exclusion, the INA contains the following jurisdiction stripping provision: "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [the INA] to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).

Here, plaintiff Jammu challenges the failure to adjudicate and/or the delay in adjudication of three Form I-730s, by which he petitions for asylee status for his relatives. The INA provides that "[a] spouse or child . . . of an alien who is granted asylum under this subsection *may*, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C. § 1158(b)(3)(A) (emphasis added). The use of the term "may" in this provision clearly connotes discretion, see Bouarfa v. Mayorkas, 604 U.S. 6, 13 (2024), and Jammu concedes that the decision whether to grant his petitions is committed to the discretion of the agency (and therefore, not reviewable by the Court). Rec. Doc. 8-2, at 4.

But Jammu does not challenge such a decision—because there has been none. Instead, he challenges the agency's delay in adjudicating and/or failure to adjudicate the petitions. The government argues that the discretionary nature of the granting of I-730 petitions precludes the Court from reviewing USCIS's pace of adjudication with respect to the petitions both under 5

4

U.S.C. § 701(a)(1) via 8 U.S.C. § 1252(a)(2)(B) of the INA and under 5 U.S.C. § 701(a)(2). Jammu argues that these statutes do not preclude this Court's jurisdiction because the pace of USCIS's adjudication is not discretionary and USCIS must adjudicate the petitions within a reasonable period of time. He submits that a delay of over five years is unreasonable.

3. *Analysis*

USCIS first argues that judicial review is precluded under 5 U.S.C. § 702(a)(1) by the jurisdiction stripping provisions of the INA. The INA provides that notwithstanding any other provision of law:

> no court shall have jurisdiction to review--
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B). There is a safety valve allowing for judicial review "of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." Id. § 1252(a)(2)(D).[4]

USCIS argues that subparagraph (ii) extends beyond the ultimate agency decision (here, whether to grant asylee status to Jammu's relatives) to the agency's pace of adjudication. There is no binding case addressing whether subparagraph (ii) extends to the pace of adjudication of an I-730 petition under 8 U.S.C. § 1158(b)(3)(A). However, the Fifth Circuit has held subparagraph (ii) extends to the pace of adjudication of an I-485 petition to adjust status pursuant to 8 U.S.C. § 1255, which provides that the "status of an alien . . . *may* be adjusted by the Attorney General, *in his*

---

[4] Although Jammu's Complaint asserts a Fifth Amendment violation, he does not now argue that the jurisdiction stripping provision is inapplicable because he has stated a constitutional claim.

*discretion and under such regulations as he may prescribe . . . ."* 8 U.S.C. § 1255(a) (emphasis added). For example, in Cheejati v. Blinken, the plaintiffs were present in the United States on employment visas and sought an "adjustment of status" to lawful permanent resident pursuant to §1255(a). 106 F.4th 388, 390 (5th Cir. 2024), cert. denied, 145 S. Ct. 1126, 220 L. Ed. 2d 422 (2025). They filed I-485 applications and experienced delay because visa numbers were not immediately available. Id. The INA "sets the number of visas that can be allocated during each fiscal year," and by regulation, a visa number must be available before an applicant's status can be adjusted. Id. at 390-91. Plaintiffs challenged the delay, arguing that the agencies' "policies of deferring adjudication of the applications until a visa number becomes available" violated §1255(a). Id. at 390. Citing the Supreme Court's recent decision in Patel v. Garland,[5] the court of appeals held that the word "any" in the phrase "any other decision" in § 1252(a)(2)(B)(ii) must be interpreted to extend to "practical applications of the discretion afforded the Attorney General in § 1255(a)." Id. at 394.The Fifth Circuit explained that § 1252(a)(2)(B)(ii) "strips federal courts of jurisdiction to review *any discretionary* decision or action rendered by the Attorney General." Id. at 394. Further, it held that "Section 1255(a) expressly leaves not only the ultimate *decision* to adjust an applicant's immigration status but also actions taken in the course of the decision-making *process*—including the pace at which that process is undertaken—to the discretion of the Attorney

---

[5] In Patel, the Supreme Court held that the prohibition of judicial review in § 1252(a)(2)(B)(i) extends beyond the ultimate decision to deny the discretionary relief contemplated by the cited statutes to also preclude judicial review of any factual findings made during the discretionary-relief proceedings. 596 U.S. 328, 337-38, 347 (2022). The Patel case also concerned discretionary adjustment of status under § 1255. Id. at 332. The plaintiff sought judicial review of the administrative law judge's finding that plaintiff had intentionally checked the "citizen" box when applying for a driver's license, thereby rendering him ineligible for a discretionary "adjustment of status" under § 1255(i). Id. at 334-35. In considering the prohibition on judicial review in § 1252(a)(2)(B)(i), the Supreme Court found that "any" is expansive and "regarding" has a broadening effect. Id. at 338-39. "Thus, § 1252(a)(2)(B)(i) encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief." Id. at 339. The Supreme Court found that this "plainly includes factual findings" and held that "Federal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and the other provisions enumerated in § 1252(a)(2)(B)(i)." Id. at 339, 347.

General." Id. Noting that the challenged policies were informed by the agency's regulations, which were themselves issued to facilitate the agency's statutory authority, the court found that the "regulations, and the conduct they direct DOS and USCIS to undertake are therefore 'action[s] of the Attorney General ... the authority for which is specified under this subchapter to be in the discretion of the Attorney General[.]'" Id. at 395 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii)). The court of appeals concluded that "the discrete acts undertaken to render an adjustment decision and the timing of those acts are determined by the Attorney General in his discretion, and that discretionary action cannot be reviewed by federal courts." Id. at 394.

The Fifth Circuit in Cheejati favorably cited its 2010 decision that was later vacated as moot when the plaintiff's immigration application was later granted. Bian v. Clinton, 605 F.3d 249, 251 (5th Cir. 2010), vacated as moot, No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010). The plaintiff in Bian sought to compel USCIS to adjudicate his I-485 petitions. The Fifth Circuit held that the language "any other decision or action" in subparagraph (ii) indicates that §1252 "exempts from judicial review any 'action' that is within the USCIS's discretion and is necessary to carry out the agency's statutory grant of authority" including regulations prescribed to carry out such duty. Id. at 253-54. Because the plaintiff in Bian contested "the USCIS's decision to adjudicate her application in compliance with regulations that are clearly within the agency's discretion to establish," the Fifth Circuit held "the federal courts are without jurisdiction to entertain her claim." Id. at 254.

Similarly, the district court in Isleem v. Peacock held that "where pace of adjudication is at issue for a discretionary action by the Attorney General, federal courts lack jurisdiction to hear the issue." No. CV 24-559, 2024 WL 3887511, at *4 (E.D. La. Aug. 21, 2024). The plaintiff in Isleem had filed a Form I-485 to adjust his immigration status. Id. at *1. After not receiving a decision,

7

he filed a claim alleging that the government agency had refused to adjudicate his form in bad faith. Id. Citing Cheejati, the district court held that the pace of adjustment decisions is left to the discretion of the Attorney General, and therefore §1252(a)(2)(B) stripped the court of jurisdiction over the plaintiff's claim. Id.

Thus, in this circuit it is settled by Cheejati and Bian that the pace of adjudication of an I-485 petition is beyond judicial review. But this case involves form I-730. The statute applicable to the I-730 applications at issue here provides that "[a] spouse or child . . . of an alien who is granted asylum under this subsection *may*, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying, or following to join, such alien." 8 U.S.C. § 1158(b)(3)(A) (emphasis added). This is similar to consideration of an I-485 petition, because under § 1255 the Attorney General "may" adjust an alien's status.[6] USCIS argues that just like the discretion under § 1255 extends to pace of adjudication, the discretion under § 1158(b)(3)(A) also extends to pace of adjudication.

Notably, Jammu does not address Bian, Cheejati, Patel, or Isleem, at all. Indeed, as USCIS points out, not a single case he cites was decided after the Supreme Court's decision in Patel. Instead, Jammu relies on older cases holding that even where the ultimate decision is within USCIS's discretion, USCIS has a non-discretionary duty to adjudicate the petition. E.g., Landry v. Chertoff, No. CIV.A.07 0506, 2007 WL 2007996, at *3 (E.D. La. July 5, 2007), abrogated by Bian, 605 F.3d 249 ("While the duty to grant an adjusted status is discretionary, the duty to process I-485 applications is nondiscretionary."); Goldschmidt v. U.S. Atty. Gen., No. 3-07-CV-670-AH, 2007 WL 3033502, at *2 (N.D. Tex. Oct. 18, 2007) ("[P]ersons who have filed immigration related applications have a clear right to have the discretionary adjudication of their applications

---

[6] Although §1158(b)(3)(A) does not state "in his discretion an under such regulations as he may prescribe" like § 1255, there is no dispute that the language "may" makes the relief in §1158(b)(3)(A) discretionary.

completed within a reasonable period of time."); Liu v. Chertoff, No. 06-3297, 2007 WL 1202961, at *3 (C.D. Ill. Apr. 23, 2007) ("[D]efendants have a nondiscretionary duty to process [plaintiff's I-485] application; they cannot decide not to process an application. Such a decision would not be an exercise of discretion, but a refusal to perform assigned duties. This Court has jurisdiction to review whether the Defendants are refusing to act."); Islam v. Heinauer, 32 F. Supp. 3d 1063, 1069 (N.D. Cal. 2014) ("[T]he government has a non-discretionary duty to adjudicate such a petition 'within a reasonable period of time.'"). The Bian decision abrogated the district court's ruling in Landry with regard to the pace of adjudication of I-485 petitions long ago. Yet Jammu asks the court to adopt the Landry court's reasoning without even acknowledging the later Fifth Circuit precedent.

Jammu also relies heavily on the pre-Bian, pre-Patel out of circuit case of Aslam v. Mukasey, where the district court found that "a plain reading of Section 1252(a)(2)(B)(ii) confirms that the INA only strips the judiciary of jurisdiction to review those discretionary decisions and actions that are 'specified under this subchapter.'" 531 F. Supp. 2d 736, 739-40 (E.D. Va. 2008). The court observed that "[a]lthough the INA places the decision of whether to adjust status in the sound discretion of the Secretary, it says nothing about the Secretary's discretion to set the pace of that decision." Id. at 740. Thus, it held that the court had jurisdiction "to determine whether the Secretary has unlawfully delayed or withheld final adjudication of a status adjustment application." Id.

Jammu similarly argues that § 1252(a)(2)(B)(ii) cannot apply because the pace of decision making and the refusal to grant a petition are not "specified under [the INA]" to be in the agency's discretion. But recent Fifth Circuit precedent has not hooked onto the "specified under this subchapter" language the way Jammu proposes. E.g., Cheejati, 106 F.4th at 394; Bian, 605 F.3d at

9

253-54. The pace of adjudicating an I-485 petition to adjust status is not explicitly specified by the INA to be in the agency's discretion. Yet, because the ultimate decision on a status adjustment petition and the regulations pursuant to which the decision is made are explicitly specified by the INA to be in the discretion of the Attorney General, the Fifth Circuit held in both Bian and Cheejati that the pace of adjudicating the petitions was beyond judicial review. Jammu does not explain why this same reasoning would not apply to the pace of adjudication of an asylee's following-to-join petitions when the INA indisputably puts the granting of such a petition in the agency's discretion.

As the government points out, other district courts have applied § 1252(a)(2)(B)(ii) beyond adjustment-of-status decisions. For example, in Haydary v. Garland, the Eastern District of Missouri considered the agency's failure to "expeditiously adjudicate his request to permit his family to enter the United States" pursuant to a "humanitarian parole" process. No. 4:24 CV 836 JMB, 2024 WL 4880406, at *1 (E.D. Mo. Nov. 25, 2024). The applicable statute provided the Attorney General with discretion "to grant parole 'under such conditions as he may prescribe . . . .'" Id. at *5 (quoting 8 U.S.C. § 1182(d)(5)(A)). Observing that this statute was within Subchapter II of Chapter 12 of Title 8, the court found that "the USCIS has decided not to expedite Plaintiff's request (an inaction as it were) and instead consider his request pursuant to its policies. This discretionary decision is subject to the jurisdictional bar." Id.

Neither party cites a case addressing pace of adjudication of an I-730 following-to-join petition by an asylee like those at issue here. The Court has found one. In Agustin v. Roark, the district court applied the Bian case to hold that it lacked jurisdiction to consider the plaintiff's claim that USCIS had taken too long to process his I-730 petition. See No. 3:25-CV-1118, 2025 WL 1869589, at *1 (N.D. Tex. July 7, 2025).

10

Thus, while there is no binding case addressing the precise issue before the Court here, recent precedent broadly applying the jurisdiction stripping provision of § 1252(a)(2)(B) indicates that the Court must find that it extends to Jammu's claims. Jammu seeks relief under 8 U.S.C. § 1158(b)(3)(A), which undisputably gives the Attorney General the discretion to grant asylum status to a family member of an asylee. Section 1158 is specified in Title 8, Chapter 12, Subchapter 2. The decisions in Bian and Cheejati are binding on this court, and both broadly interpret the word "action" in § 1252(a)(2)(B)(ii) to extend to and preclude jurisdiction over challenges to the pace of adjudication of an application the Attorney General has discretion to grant. Just like in those cases, whatever actions USCIS takes in the course of exercising its discretion to adjudicate the I-730 applications is not subject to judicial review, even if those actions result in delayed adjudication.[7] See Soni v. Jaddou, 103 F.4th 1271, 1272–73 (7th Cir. 2024), reh'g denied, No. 23-3220, 2024 WL 3683115 (7th Cir. Aug. 6, 2024) (finding that"[s]etting priorities—for example, how many employees to assign to processing applications under [8 U.S.C. § 1182(a)(9)(B)(v)], as opposed to handling other duties" were "actions"). Accordingly, § 1252(a)(2)(B)(ii) strips this court of any jurisdiction it might otherwise have had to review the USCIS's delay in adjudicating Jammu's I-730 petitions pursuant to § 1158(b)(3)(A).

It is therefore RECOMMENDED that the government's Motion to Dismiss be GRANTED, and this case be dismissed for lack of subject matter jurisdiction.

---

[7] The delay of over five years does appear to be extraordinary, although the government has not yet provided its explanation for why it has taken so much longer than the "aspirational goal of six months" set by Congress. Li, 2023 WL 3431237, at *1; see 8 U.S.C. § 1571(b). Nonetheless, as another court has observed, "ordering Defendant to adjudicate Plaintiff's application would result in Defendant simply prioritizing Plaintiff's application over other applicants, who may have been waiting even longer for a decision and are at least 'equally deserving of prompt adjudication,' thereby producing 'no net gain' for the asylum system overall." Davydov v. Cioppa, No. 25-CV-00688 (HG), 2025 WL 1700580, at *4 (E.D.N.Y. June 13, 2025) (quoting Fangfang Xu v. Cissna, 434 F. Supp. 3d 43, 54 (S.D.N.Y. 2020)).

<u>NOTICE OF RIGHT TO OBJECT</u>

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 11th day of February, 2026.

_____
Janis van Meerveld
United States Magistrate Judge

12